BOCKMAN v. ARK. STATE MEDICAL BOARD.

5-1573                                         313 S. W. 2d 826

Opinion delivered June 2, 1958.

[Rehearing denied July 1, 1958.]

144

*John C. Sheffield, Herrn Northcutt* and *George K. Cracraft, Jr.,* for appellant.

*Bailey, Warren & Bullion,* for appellee.

GEORGE ROSE SMITH, J. This is a proceeding instituted before the State Medical Board for the revocation of the appellant's license to practice medicine. The complaint alleges two statutory grounds for revocation: First, that the license was obtained by fraud, and, secondly, that Dr. Bockman has been convicted of crimes involving moral turpitude. Ark. Stats. 1947 (1957 Replacement), § 72-613. The board, after a hearing at which Dr. Bockman appeared by counsel but not in person, found that both charges were sustained by the evidence and entered an order revoking the license. The record was reviewed on certiorari by the Pulaski Circuit Court, which affirmed the board's decision.

The appellant contends that the board's findings of fact are not sustained by any substantial competent evidence. Upon this point it is our rule in proceedings like this one that the board's action will not be set aside on certiorari unless there is an entire absence of substantial evidence to sustain the findings, in which case the

board's action is deemed to be arbitrary. *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041; *Eclectic State Med. Bd.* v. *Beatty,* 203 Ark. 294, 156 S. W. 2d 246.

For a reason to be explained later we discuss only the charge that the license was obtained by fraud. Dr. Bockman received his license from the Arkansas Eclectic Medical Board in 1922, although he does not appear to have practiced medicine in Arkansas until about 1937. In applying for the license Dr. Bockman stated on oath that he had attended lectures at the Kansas City College of Medicine and Surgery for four years, beginning in 1917, and that he had been granted a diploma by that institution on May 5, 1922.

The records of the Kansas City school were not available, but counsel for the board introduced the affidavits of six physicians who attended the college and graduated in the class of May, 1922. All six state that Dr. Bockman did not attend the school. It was also shown by affidavit that Dr. Bockman did not appear in the class graduation picture, nor was his name listed in the announcement of the commencement exercises. Counsel also introduced certified copies of judicial opinions rendered in Connecticut, in a proceeding which resulted in the revocation of Dr. Bockman's license to practice there, in 1928. In detailed findings of fact the trial court found that Dr. Bockman was not a *bona fide* graduate of the Kansas City school, having merely paid $30 for the privilege of taking an examination (which no one failed to pass if a suitable fee was paid) and having on that basis been awarded an "honorary" degree. The trial court's decision was affirmed on appeal. *Aronson* v. *State Dept. of Health,* 108 Conn. 84, 142 Atl. 476.

This proof is sufficient to sustain the finding that the license was obtained by means of false representations. Although the evidence consists of affidavits and certified copies of court decisions, it was nevertheless competent. This is not a criminal prosecution, in which the accused is entitled to be confronted by the witnesses against him. It is an administrative proceeding, civil in nature, as to which the governing statute provides:

"The Board shall not be bound by strict or technical rules of evidence, but shall consider all evidence fully and fairly, provided, however, that all oral testimony considered by the Board must be under oath." Ark. Stats., § 72-614. A provision of this kind is manifestly appropriate when the board members are not trained in the law, for the tribunal could not proceed at all if it were required to observe technical rules of evidence. *Meffert* v. *State Board,* 66 Kan. 710, 72 P. 247, affirmed, 195 U. S. 625. Affidavits are frequently used in quasi-judicial proceedings, as in hearings before the workmen's compensation commission; there is no constitutional objection to this method of proof in a civil proceeding. Here the evidence is wholly uncontradicted, as Dr. Bockman did not choose to testify or to offer proof tending to refute the charges against him. We have no doubt that the evidence adduced was admissible in a hearing of this kind and was ample to sustain the findings.

Next, it is contended that the board is now without power to revoke any license issued before the passage of Act 198 of 1957. Appellant relies on this proviso in the 1957 statute: "Nothing in this Act shall be construed to invalidate or affect any person holding a valid unrevoked or unsuspended license to practice medicine in this state on the effective date of this act." Ark. Stats., § 72-623. The argument is that since the 1957 statute authorizes the revocation of licenses procured by fraud (Ark. Stats., § 72-613), the quoted proviso prevents the cancellation of any license that was issued before the act became effective.

This interpretation of the legislative intent is unsound. The statute that was superseded by the 1957 act also provided for the revocation of licenses obtained by fraud. Pope's Digest, § 10740. Indeed, that provision has been in the statutes for almost fifty years. The 1957 act, among other things, raised the standards for admission to the practice of medicine, by requiring a written examination, fixing the passing grade at an average of 75 per cent, authorizing the board to require all applicants to serve one year of internship, etc. We

think it plain that the proviso relied upon by the appellant was inserted to protect physicians already licensed against the possibility of a revocation on the ground that their qualifications did not meet the more stringent requirements embodied in the 1957 act. If the proviso were given the sweeping effect that the appellant would have us attribute to it, it would follow that no license issued before the effective date of Act 198 of 1957 could ever be revoked for any reason whatever. Of course that was not the legislative intention.

Finally, the appellant interposes a plea of *res judicata*. It is shown that in 1937 a physician, acting as a representative of the medical profession as a whole, filed with the Eclectic Medical Board a complaint asking that Dr. Bockman's license be revoked on the ground that he had been convicted in New York of crimes involving moral turpitude. That board declined to revoke the license, holding that the proof of identity was insufficient and that in any event the offenses did not involve moral turpitude. On certiorari the circuit court refused to disturb the board's findings, and no appeal was taken to this court. That decision is now relied upon as a complete bar to the present proceeding.

We think the plea to be well founded with respect to the second count in the present complaint, which alleges the same New York convictions. When an administrative tribunal acts judicially or quasi-judicially, there are good reasons for holding that its decisions should have the finality that is conferred by the rule of *res judicata*. See an extended note on the subject in 27 Michigan Law Review, p. 677. Especially is this true when, as here, the administrative decision has been upheld upon judicial review.

The prior decision, however, involved only the New York criminal convictions and is not a bar to the charge that Dr. Bockman's license was fraudulently procured. It is shown that the attorney for the complainant in the 1937 proceedings knew that Dr. Bockman was not a *bona fide* graduate of the Kansas City medical school, but that fact was not asserted as a ground for the revoca-

tion of the license and was not considered by the Eclectic Medical Board. Doubtless the charge of fraudulent procurement of the license might have been joined with the charge of prior criminal convictions, but a joinder was not essential. The two instances of misconduct were entirely distinct, separated in time by a number of years, and had no bearing upon each other. Hence there were two causes of action, and a decision upon the first had no effect upon the second. *State Life Ins. Co.* v. *Goodrum,* 189 Ark. 509, 74 S. W. 2d 230. Since it was settled by the *Beatty* case, *supra,* that the practice of medicine under a license fraudulently obtained is a continuing offense, no issue of limitations or laches is now presented.

We conclude that the board was entitled to act upon the first charge in the complaint, but the defense of *res judicata* to the second count should have been sustained. Upon a finding of guilty the board is authorized to revoke the license, or to suspend it, or to place the person charged upon probation. Ark. Stats., § 72-614. The record does not indicate what penalty would have been imposed had the board considered only the charge that the license was procured by fraud. The cause will therefore be remanded, through the circuit court, to the board, to the end that that body may enter an order based only upon its finding that the license was obtained by false representations.

Reversed.