SEBASTIÁN INFANZÓN, Plaintiff and Appellant, v. ECONOMIC STABILIZATION ADMINISTRATION ET AL., Defendants and Appellees; ISABEL PÉREZ MALDONADO, Intervener.

No. 23. Decided February 1, 1962.

*Ernesto Juan Fonfrías, F. Fernández Cuyar,* and *Fausto Ramos Quirós* for appellant. *Víctor M. Marchand, Nieves Agostini Torres,* and *Miguel Francis Ventura* for appellees. *Otero Suro & Otero Suro* for Isabel Pérez Maldonado, intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

. For many years prior to 1949, petitioner occupied as tenant a commercial building at No. 1102 Ponce de León Avenue, which is a one-story building. He paid a maximum monthly rent of $270. In 1949 the owner built two additional stories which he leased to the same tenant. For the purposes of the information submitted by the owner to the Economic Stabilization Administration, on October 19, 1949, the latter fixed, without the tenant's intervention, a rental of $345 for the one floor and $400 for the other. On the basis of this rental the tenant and the owner executed a lease contract by public instrument for 10 years establishing said rents for the above-mentioned floors plus the original rent of $270. Upon fixing said rentals the Administrator stated that they were based on the information furnished by the landlord and if said information was incorrect, incomplete or false, the order fixing the rents would be null and another would be entered instead on the basis of the true information which should have been submitted originally.

In September 1950 the petitioner appealed before the Administration requesting a reduction in the rents fixed for the two recently constructed stories. The Administration did not make any decision and in January 1952 the petitioner again requested a revision of the rentals alleging that the owner had informed a construction cost of $74,000 when said cost had been from 40 to 42 thousand. After several proceedings the Administration held hearings on October 3 and December 10, 1952, in which evidence was presented as to the cost of the construction. On the basis of the drawings, the specifications and other documents filed by the owner with the Bureau of Permits and with the State Insurance Fund, the tenant's evidence strongly tended to show that the cost of this work had been $40,408.80. He also presented expert testimony showing that said work could have cost some $43,000 although he accepted up to $47,000. The owner

tried to discredit said testimony with that of the contractor himself who did the work and who stated that the construction contract had amounted to $70,937.75.[1]

On September 30, 1953 the Administrator sent a letter to the tenant informing him that pursuant to the evidence presented a readjustment in the maximum rent fixed was not justified and the case was closed. On the following October 6, the tenant requested the Administrator to explain the reasons for his decision, and on October 20, 1953 the latter sent him a copy of the memorandum submitted by the Administrator's attorney. This memorandum constitutes the basis in fact and at law on which the Administrator denied the revision of the rentals. It was stated therein that there had been great conflict in the evidence as to the cost of the construction. The Administrator did not decide the conflict. On the contrary, he produced an element which had not been raised by the parties and established the following: That the lot where the building was located appeared to be assessed, for taxation purposes, in $11,360, for the fiscal year 1950–51 and had been assessed for the same purposes, in $57,620 for the following year 1951–52. It determined that this amount was equivalent to 80% of the real value of the lot and therefore said real value was $72,000. From this value of the lot which contained a one-story building prior to

---

[1] Confronted with a cost of $40,408.60 according to the drawings, specifications and official documents presented, some of them under oath, which had been submitted to the government agencies as compared with $70,937.75, the record shows the following from the testimony of the contractor: "The amount stipulated in the contract with the building's owner represents the truth as to the cost of the building. The estimate submitted to the Bureau of Permits is only an approximate estimate which is always made for a much lower amount than the estimated cost of the building. [Q.] For what purpose? [A.] For the purpose of paying as little as possible for workmen's insurance; and this estimate is actually made— not according to what the building will cost but according to the minimum estimate that the Planning Board will accept. If they had accepted $20,000 it would have been made for twenty thousand."

1942, he assigned 40% to the second and third floors. Using the cost estimate of some $46,000 of the tenant's expert, he added that proportionate part of the lot's value, amounting to $28,800 and fixed the cost of construction at $74,800. On the basis of that cost, 12% amounted to $748, and therefore he sustained the rent of $745 for the two stories as reasonable.[2]

■ The tenant appealed to the Superior Court, San Juan Part, to review said determination, Case No. 53–4043. Upon filing his petition he did not know the grounds for the Administrator's decision and he so stated. Nevertheless, he informed the Superior Court in his brief as to the value of the lot which the Administrator had considered as cost of construction. Furthermore, the Superior Court was duly informed of that fact by virtue of the original records which were sent up to said court. Without deciding these questions the court decided the case on March 9, 1955 and confirmed the Administrator as to the fixing of those rents pursuant to the doctrine that only questions of fact were involved, citing *Ledesma* v. *District Court* and *Adm'r of Econ. Stab.* v. *Sup. Ct.; Vélez, Int., supra.*

---

[2] In view of the doctrine applicable to this administrative agency as to the facts, *Ledesma, Administrator* v. *District Ct.*, 73 P.R.R. 379; *Adm'r of Econ. Stab.* v. *Sup. Ct.; Vél-z, Int.*, 75 P.R.R. 419; *García* v. *Superior Court*, 82 P.R.R. 651, 657; *Mejías* v. *Superior Ct.; Gavillán, Int.*, 79 P.R.R. 299; *cf. Rivera* v. *Chancellor of the University*, 73 P.R.R. 361, 365; *Denis* v. *Savings and Loan Fund Ass'n*, 75 P.R.R. 798, 802, 803; *Concepción* v. *Board of Accountancy*, 80 P.R.R. 190, 194–95; *López* v. *Planning Board*, 80 P.R.R. 625, 650; *Viera* v. *Racing Comm'n; San Juan Racing, Int.*, 81 P.R.R. 688, 697, it is of great importance for the protection of the rights of the parties and for the proper subsequent judicial function of the courts, that the Administrator specifically determine the facts on which he bases his decisions. If he had settled the conflict in the evidence as to the cost of construction, and then in favor of the landlord, the question of law which has been raised would not have arisen. Upon making his computations the Administrator used the cost offered by the tenant. Whatever his reason for 40% of the alleged value of the lot for the two stories and whatever his reason, within his theory that that value was part of the cost of construction, for using that of 1952 instead of 1949, date on which the work was performed, his computations apparently were arbitrary.

It is appropriate to establish, although not by way of review, that said judgment was wrong. The case presented a question of law which was indeed of importance, to wit whether or not in view of the provision of the Reasonable Rents Act in the sense that the maximum rent of a building constructed after October 1, 1942 should not exceed 12% of the *cost of construction*, the Administrator had the authority to include the value of a lot which *prior to 1942* constituted together with its building an economic unit of rent which produced a maximum rent. It was not a case of a building constructed after 1942 for which the owner would have had to invest in the purchase or acquisition of the lot in order to build it.

However, since the tenant did not appeal to this Court to review that judgment of the Superior Court, that is the law in his case, and as far as he is concerned as tenant, we must base our decision on that situation of fact and of law which is final. Those are the antecedents of the proceeding before us.

On February 27, 1957 the tenant filed a petition before the Administration for a readjustment of the afore-mentioned rents. He alleged that upon fixing the rents on October 19, 1949 the Administrator had set forth that the same were based on the information submitted by the landlord and that if said information was wrong, incomplete or false, the order would be considered void and another would be rendered on the basis of the true information which should have been submitted originally; that the Administrator had concluded that the cost of construction was $46,000 [as a matter of fact the Administrator impliedly accepted the cost of construction to be $46,000 admitted by the tenant instead of $70,931.75 of the owner] and therefore the rent originally fixed should be modified according to the exception made by the Administrator himself. He further alleged that the rent was unreasonable because upon adding 40% of the lot's value to the

construction, a proportional deduction was not made on the rent of the first story which also included the lot; and that assuming that it was correct to add that value, the Administrator should have used the amount of $11,360 as the assessment value of the lot for the year in which the building was erected instead of the $57,620 assessment of subsequent years.

At first the Administrator denied the petition because he understood that it was tantamount to a reconsideration of his former decision sustaining the rents. Subsequently, in view of a motion for reconsideration submitted to him by the tenant, he entertained the review proceedings of the rents and summoned the parties to a hearing. On October 28, 1957 he entered an order denying the petition and left the rents unchanged. On this occasion the Administrator again failed to settle the conflict in the evidence as to the real cost of construction and to make findings as to whether or not the information originally given by the landlord, which served as basis for the rents fixed, was wrong, incomplete or false. On the contrary, he ratified his thesis of adding part of the lot's value to the cost of construction. The tenant appealed again by way of review before the Superior Court, San Juan Part, Case No. 57–6351, and the trial court, without passing on the merits, disposed of the matter on March 20, 1959, on the defense of res judicata and denied the petition for review. We issued this certiorari.

■■ As we have previously noted, within the economic philosophy and the purposes of the Reasonable Rents Act, and in view of the legislative provision to the effect that the rent of new buildings shall be fixed on the basis of not exceeding 12% of the cost of construction, in a situation of fact such as the instant case, whether or not it is proper to include as part of the cost of the construction of a second and third floors, a value attached to the lot on which there was already a first floor prior to 1942, is a fact which raises an important question of law in the interpretation of the rent statutes.

Assuming that it is proper to add said factor, whether to consider within the element of construction cost the market value of that lot which together with its building originally constituted an economic unit for rent, or whether to consider the cost of the lot to the owner, is also another important question in the application of the law. Nevertheless, this was a point on which the trial court could not pass, nor can we, since it is res judicata. The history of the case shows that these are questions of fact and of law which went before the Superior Court in case No. 53–4043 between the same parties and although at that time its judgment was erroneous, since it was rendered with jursdiction and there was no fraud to obtain the same, in the absence of a petition for review it becomes res judicata. "Only a judgment obtained in a suit for revision shall be effective against the presumption of the truth of the res adjudicata." Section 1204 of the Civil Code (1930 ed.) See authorities and cases cited in *Bolker* v. *Super. Ct.; Sosa, Int.*, 82 P.R.R. 785, 787.

██ Petitioner maintains that the trial court actually eliminated the power of continuous jurisdiction granted by the legislator to the Administrator, to make, amend or revoke, from time to time, such rules and regulations, orders, and determinations as he may deem necessary and proper, in order to carry out the purpose of the Act. Section 5(d) of the Reasonable Rents Act. At least, under the circumstances of this case, the trial court's decision did not produce such effect.

██ The former provision of the Act permits the Administrator, in view of the fluctuating facts and circumstances, to modify his determinations concerning rents although the same might be affirmed by the court in the light of the situation of fact and of law in which they were rendered, as a useful and necessary power to maintain at all times the rents consistent with the standards of the Act he enforces. Hence the continuous jurisdiction that he has

over a matter which may be subject to changes. *Cf. Federal Comm'n v. Broadcasting Co.*, 309 U.S. 134; *Easton Publishing Co. v. Federal Communications Comm'n*, 185 F.2d 987 (C.A.D.C. 1950); *Delta Air Lines, Inc. v. C.A.B.*, 280 F.2d 636 (C.A.D.C. 1960). In the second administrative proceeding no other evidence or fact was presented different from those the Administrator had before him in the first proceeding. In effect, the second proceeding only constitutes an attempt of the tenant to obtain in the administrative forum a reconsideration of the court's former decision. In the absence of different facts and circumstances, the law that governed petitioner's case in his attempt for reconsideration was the Administrator's determination adding part of the value of the lot as cost of construction which was affirmed by the court.

The court's former judgment, case No. 53–4043, constitutes res judicata of the litigious questions submitted to the trial court in this second petition for a review of the same refusal of the Administrator to modify said fixed rents.[3]

The writ of certiorari issued will be quashed and the judgment appealed from will remain in full force and effect.

---

[3] The application of the doctrine of res judicata made in this decision is limited to the facts and circumstances of this case. We are not deciding nor implying any opinion concerning other phases of said doctrine in its application to administrative agencies and the proceedings before them, nor are we deciding which would have been the rule if the Administrator would have set aside his original determination of rents by settling the conflict in the evidence as to the cost of building itself or, if it had concluded that the landlord erroneously gave false information for the determination of rents. See: the illustrating argument of Professor Davis on the doctrine of res judicata concerning the function of administrative agencies in his Treatise "Administrative Law", vol. 2, pp. 545–628 (1958); New York Jurisprudence, Vol. 1, pp. 464–468 (1958); *cf. In re Federal Water & Gas Corp. et al.*, 188 F.2d 100; *Mayfair York Corp. v. Weaver*, 178 N.Y.S. 2d 254; *Happy Coal Co. v. Hartbarger*, 65 S.W.2d 977; *Hollywood Circle v. Department of Alcoholic Bev. Con.*, 361 P.2d 712; *Sunshine Coal Co. v. Adkins*, 310 U.S. 381; *Bockman v. Arkansas State Medical Board*, 313 S.W.2d 826; *Hurwitz v. Caputa*, 207 N.Y.S. 2d 153; *Killingsworth v. Broyles*, 300 S.W.2d 164; *Ogier v. Pacific Oil and Gas Development Corporation*, 288 P.2d 101.