**Julianne KUEHN, f/k/a Julianne Irene Keller, Appellee,**

v.

**David GARCIA, Appellant.**

**No. 78–1475.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1979.

Decided Nov. 8, 1979.

Rehearing Denied Dec. 18, 1979.

---

David Garcia, Devils Lake, N. D., for appellant.

Gary R. Thune, Shaft, McConn, Fisher & Thune, Grand Forks, N. D., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

GIBSON, Chief Judge.

David Garcia appeals from an order of the District Court[1] granting Julianne Kuehn's motion for summary judgment on the issue of liability in a legal malpractice action brought by Kuehn against Garcia. The District Court held that the judgment of the North Dakota Supreme Court in a prior disciplinary proceeding against Garcia rendered the issue of Garcia's tort liability to Kuehn res judicata, and that Garcia was therefore collaterally estopped from relitigating the issue in the subsequent malpractice action. While we do not agree with the District Court's analysis of this issue, we nevertheless affirm on the grounds that the stipulated and uncontroverted facts demonstrate that Garcia's ac-

---

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation.

1. The Honorable Paul Benson, Chief Judge, United States District Court, District of North Dakota.

tions constituted negligence as a matter of law.

## I

The charge of legal malpractice arose out of an employment arrangement entered into in 1974. The facts, as recited by the North Dakota Supreme Court, were as follows:

Mr. Garcia was retained by Julianne Keller [now Kuehn] to represent her in a divorce case. He commenced the action and a counterclaim was interposed. His client moved to Wisconsin. The trial was set for December 30, 1974, and Mr. Garcia was so advised in early December, at the latest. He wrote a letter to his client dated December 24, 1974, advising her of the date of the hearing. She denies having received the letter and did not appear at the hearing, and neither did her attorney. Apparently the letter was lost in the Christmas mail rush. Judgment was entered against Mrs. Keller by default. Mr. Garcia had accepted attorney fees in the amount of $450 to represent her. She never was advised by telephone of the date of the hearing, nor was she advised by mail or telephone of the entry of the judgment against her. Mr. Garcia said he assumed she decided not to proceed with the litigation and therefore did not appear for the hearing.

*Matter of Garcia*, 243 N.W.2d 383, 385 (N.D. 1976).

Garcia was disciplined by the North Dakota Supreme Court in a proceeding brought by the Grievance Committee of that court. *Matter of Garcia, supra.* In its opinion, the state supreme court reviewed allegations regarding Garcia's handling of four separate cases, one of which was Kuehn's divorce action. The court held that, in all of the cases reviewed, the facts warranted the conclusion that Garcia had violated Canon 7 of the North Dakota Code of Professional Responsibility for lawyers,[2] which requires that a lawyer represent a client zealously within the bounds of the law. The court further held that, in all of the cases except Kuehn's, Garcia had also violated Canon 6 of the Code of Professional Responsibility, which requires that a lawyer represent a client competently. The court found that:

It is obvious that Mr. Garcia has failed to keep his clients informed as to the progress of the matters entrusted to him, and has failed to represent them adequately in some cases, although he has the ability to do so.

243 N.W.2d at 385. The court ordered Garcia to repay the affected clients certain sums "lost to [them] because of his neglect."[3] In Kuehn's case, he was ordered to repay the $450 fee she had paid to him to represent her. In addition, the court concluded that Garcia's "violations of the Code of Professional Responsibility are so serious that censure alone would be an inadequate response" and suspended his license to practice law in North Dakota for thirty days. 243 N.W.2d at 385.

After Garcia's suspension, Kuehn brought this action for legal malpractice in the United States District Court for the District of North Dakota. Kuehn alleged that she had employed Garcia as an attorney to represent her, and that he

negligently permitted judgment to be entered against plaintiff by his failing to appear at trial or notifying plaintiff of trial, whereby plaintiff was denied custody of children, her share of marital property valued in excess of $40,000, incurrance [*sic*] of expense of $800.00, * *.

Appellant's Brief at 3.

Both parties moved for summary judgment. Garcia's motion for summary judg-

---

2. The North Dakota Supreme Court has adopted the American Bar Association Code of Professional Responsibility.

3. These words are quoted from the syllabus of *Matter of Garcia*, 243 N.W.2d 383 (N.D.1976). In North Dakota the supreme court was formerly required by statute to file a syllabus of each decision, "so prepared as to embody as briefly as practicable the principles settled in and by such decision." N.D. Century Code, § 27–02–23 (1974). Section 27–02–23 has been amended and no longer contains the syllabus requirement. 1977 N.D.Sess.Laws, ch. 257 § 1.

ment was denied. Kuehn's motion for partial summary judgment on the issue of liability was granted in two stages. First, in its unpublished order of January 13, 1978, the District Court held that:

It has been judicially determined by a court of competent jurisdiction that defendant, in his legal representation of plaintiff as her retained lawyer in the divorce action involved herein, failed to meet the standards of conduct required of a lawyer in the State of North Dakota under similar circumstances. The opinion of the North Dakota Supreme Court in *In re David Garcia* is res judicata on the question of defendant's negligence in his handling of plaintiff's divorce action.

The issues remaining for jury determination in this action are (1) whether plaintiff was damaged by reason of defendant's negligent conduct, and if so, (2) the amount of her damages.

*Kuehn v. Garcia*, No. A2-76-113 (D.N.D. Jan. 13, 1978) (citations omitted).

On January 20, 1978, in another unpublished order, the District Court went one step further, holding that:

[B]y his negligence, [Garcia] deprived plaintiff of her right to defend the divorce action against her [4] and she was thereby for the purposes of her action against defendant herein, effectively deprived of her interest in the parties' property without due process of law.

*Kuehn v. Garcia*, No. A2-76-113 (D.N.D. Jan. 20, 1978).

The damage issue was submitted to a jury on special interrogatories. It found that Kuehn's interest in the marital property at the time of the divorce was $20,000, and the District Court entered judgment for Kuehn in that amount plus interest.

The only issue raised by Garcia on appeal is whether the District Court properly applied the doctrine of collateral estoppel in granting Kuehn's motion for summary judgment on the issue of liability.

## II

Summary judgment is proper when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On review of a grant of summary judgment, this court must view the record in the light most favorable to the party opposing the motion. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725 at 727 (8th Cir. 1979); *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209–10 (8th Cir. 1976). While this court cannot decide disputed issues of material fact, it may determine whether a genuine issue exists and whether the law was applied correctly. In appellate review, the trial court's judgment may be sustained regardless of an incorrect analysis if the same result may be reached on theories other than those employed by the trial court; other grounds may provide a proper legal basis for affirmance. *United States Gypsum Co. v. Greif Brothers Cooperage Corp.*, 389 F.2d 252, 262 (8th Cir. 1968); *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 682 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); 10 Wright & Miller, Federal Practice and Procedure § 2716, at 440–41 (1973).

■ The District Court granted summary judgment to Kuehn on the basis of collateral estoppel. While this rationale appears reasonable and logical in light of recent developments in the concept of collateral estoppel, the law of North Dakota does not appear to support this approach as apparently North Dakota still requires privity for the offensive use of collateral estoppel. Since Kuehn was not a party to the disciplinary proceeding, and was not in privity with the Grievance Committee of the Supreme Court of North Dakota, under North Dakota law she may not benefit from the application of collateral estoppel.

4. In fact, Kuehn (then Keller) commenced the action and a counterclaim was filed.

## III

The district court in a diversity action must apply substantive state law as formulated by the forum state. *Angel v. Bullington*, 330 U.S. 183, 186–87, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *National Lead Co. v. Nulsen*, 131 F.2d 51, 56 (8th Cir. 1942), *cert. denied*, 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131 (1943). Both collateral estoppel and res judicata are issues of substantive law requiring the application of the state common law. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Until recently, the scope of collateral estoppel was uniformly limited by the doctrine of mutuality. Under the doctrine, neither party or their privies could use a prior judgment as an estoppel against the other unless both parties or their privies were bound by the judgment. The mutuality requirement often provided a party who had litigated and lost in a previous action an opportunity to relitigate identical issues with new parties. As a result, the doctrine of mutuality has been subjected to severe criticism and rejection by courts and commentators. *See, e. g., Bernhard v. Bank of America National Trust & Savings Association*, 19 Cal.2d 807, 812, 122 P.2d 892, 895 (1945). The United States Supreme Court, in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 349–50, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), rejected the requirement of mutuality in the defensive use of collateral estoppel, thereby estopping a plaintiff from asserting a claim that the plaintiff had previously litigated and lost against another defendant. In *Parklane Hosiery v. Shore*, 439 U.S. 322, 331–32, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Court expanded its rejection of the mutuality requirement to those cases involving offensive use of the doctrine, when a plaintiff seeks to estop a defendant from relitigating issues which the defendant previously had litigated and lost against a different plaintiff. The North Dakota Supreme Court, however, has refused to abandon the mutuality requirement, at least in the context of an offensive use. *Armstrong v. Miller*, 200 N.W.2d 282, 288 (1972); *see Sturdevant v. SAE Warehouse, Inc.*, 270 N.W.2d 794, 798 (1978); *Dolajak v. State Automobile and Casualty Underwriters*, 252 N.W.2d 180 (1977).

In light of the North Dakota Supreme Court's recent opinion adhering to the mutuality requirements of *Armstrong*, in *Sturdevant v. SAE Warehouse*, 270 N.W.2d 794, 798 (1978), we are not at liberty to sanction the offensive use of collateral estoppel in a diversity case applying North Dakota law even though we might prefer to follow the recent trend away from strict mutuality. The requirement of mutuality and traditional concepts of privity have not been abrogated in North Dakota, and Kuehn does not stand in a privity relationship with the Grievance Committee.

## IV

Under North Dakota law, an attorney may be held liable in tort to his client if it is found that the attorney "failed to exercise that degree of care commonly possessed and exercised by other reasonable, careful and prudent lawyers of this State * * *." *Feil v. Wishek*, 193 N.W.2d 218, 225 (N.D.1971). *See Rolfstad, Winkjer, Suess, McKennett and Kaiser, P.C. v. Hanson*, 221 N.W.2d 734, 737 (1974). Under traditional concepts of negligence, omission to act can be negligent when one is under a duty to act. "Actionable negligence is the existence of a duty or obligation on the part of one to protect another from injury, *failure to perform or discharge that duty*, and resulting injury to such other proximately caused by the breach of duty." *Brauer v. James J. Igoe & Sons Construction, Inc.*, 186 N.W.2d 459, 468 (N.D.1971) (citations omitted) (emphasis added).

While issues of negligence ordinarily are fact questions to be resolved by a jury, when the evidence is such that reasonable men can draw but one conclusion, the issue of negligence becomes one of law. *Gleson v. Thompson*, 154 N.W.2d 780, 786 (N.D. 1967).

In the present case, Garcia stipulated to certain facts. On July 22, 1974, Garcia agreed to represent Kuehn, who was then living in Wisconsin, for a fee of $450 in her suit for divorce from her husband, Joseph Keller, Jr., of Esmond, North Dakota. Garcia filed a complaint and received an answer and counterclaim from Keller's attorney. On August 26, 1974, he phoned Kuehn regarding these documents and wrote Keller's attorney, sending a copy to Kuehn, proposing a property settlement and custody arrangements. Keller's attorney responded with a counterproposal on September 4, which Garcia forwarded to Kuehn on September 9. Kuehn phoned Garcia's office on November 1, 1974, and Garcia responded only by letter enclosing copies of his proposal and the counterproposal. Garcia next wrote Kuehn on December 24, 1974, but failed to include a street address or post office box in the address on the envelope. Then, on December 30, 1974, the judge presiding over the divorce suit called Garcia's office because of his failure to appear in court on that date. Kuehn phoned Garcia on January 23, 1975, but on February 7, 1975, judgment was entered in the divorce case in favor of Kuehn's husband.

These facts establish the essential elements of negligence. The existence of a legal duty was established because Garcia was employed by Kuehn to represent her in a legal matter. Garcia breached this legal duty by failing to appear in court on December 30, 1974, to represent Kuehn in the action. Garcia did not even bother to call Kuehn regarding her response to either his letter of November 4, 1974, concerning his negotiations with Keller's attorney, or his letter of December 24, 1974, concerning the trial date. Apparently Garcia had no contact, other than these two letters, with his client between November 2, 1974, and January 23, 1975. By failing to contact Kuehn and ascertain her view of the negotiations and of the course to be taken at trial, Garcia "failed to exercise that degree of care commonly possessed and exercised by other reasonable, careful and prudent lawyers" in North Dakota. *Feil v. Wishek, supra* at 225. *See generally* Annot., Attor-

ney's Liability for Negligence in Cases Involving Domestic Relations, 78 A.L.R.3d 255, 271–72 (1977). As a proximate result of Garcia's failure to represent Kuehn at the trial date December 30, 1974, judgment was entered in favor of Kuehn's former husband on February 7, 1975. Only one essential element, the issue of damages, remained for the District Court to determine. This was properly determined by the District Court through submission to a jury on a special interrogatory.

We conclude that in viewing these stipulated facts in the light most favorable to Garcia, there exists no genuine issue of material fact regarding Garcia's negligence in representing Kuehn. It is apparent from the record in this case that Garcia failed to exercise the degree of professional care, skill and diligence commonly possessed by reasonable and prudent attorneys in North Dakota. Accordingly, a grant of summary judgment in favor of Kuehn was proper.

For the reasons herein stated, the judgment is affirmed.