Sam **RICHARDSON, Jr., J.S. Beebe, J.S. Beebe, Jr., Joe R. May, Berg, Laney and Brown, Appellants,**

**and Jack Washington.**

v.

**PHILLIPS PETROLEUM COMPANY, Appellee.**

No. 85–1033.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 18, 1985.

Decided May 23, 1986.

Rehearing and Rehearing En Banc Denied Aug. 25, 1986.

Robert C. Compton, El Dorado, Ark., for appellants.

Robert K. Walsh, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, ARNOLD and FAGG, Circuit Judges.

LAY, Chief Judge.

Six independent oil and gas contractors appeal from the district court's order dismissing with prejudice their amended complaint. The district court found that the facts and issues as determined in prior proceedings before the Arkansas Oil and Gas Commission barred litigation of the facts and issues raised in the complaint. We reverse, and remand to the district court for a plenary trial.

## Background

Sam Richardson and five other individuals ("the Richardson group") hold oil leases and operate wells on a tract of land in Union County, Arkansas which is adjacent to a tract on which Phillips Petroleum Company ("Phillips") holds oil leases and operates wells. In 1970, Phillips was authorized by the Arkansas Oil and Gas Commission ("the Commission") to establish and operate the Smackover Nacatoch Sand 985 Acre Unit ("the Smackover Unit") with the express purpose of implementing an experimental secondary recovery steam, air, and water injection process. The Commission's 1970 unit authorization was conditioned on Phillips' operations being conducted in such a manner as not to endanger the production of nearby operations. However, contending that Phillips' Smackover Unit injections migrated from that unit and damaged the productivity of the Richardson group's adjacent wells, the Richardson group twice instituted adjudicatory proceedings before the Commission challenging Phillips' operation and seeking injunctive relief. In 1976, some members of the Richardson group joined in an application for an order from the Commission requiring that Phillips discontinue its air injections on the Smackover Unit. After a full administrative hearing, their request that Phillips' 1970 authorization be revoked was denied without prejudice to the filing of a new application upon the production of new evidence. The Commission concluded, in pertinent part:

1. That the applicants have failed to prove that they have experienced increasing and irreparable damage to their off-set wells producing from the Nacatoch Sand as a result of the operations of Phillips Petroleum Company in operating its 985 acre Smackover Nacatoch Sand Unit and * * *

2. That the applicants have failed to prove that unit operations of the Smackover Nacatoch Sand 985 acre unit is [sic] in violation of any of the Orders of the Arkansas Oil and Gas Commission and to the contrary, Phillips Petroleum Company has proven that its operation of its Smackover Nacatoch Sand 985 acre unit is not in violation of any of its Orders.

The Commission's 1976 order was not appealed. In 1979, the entire Richardson group now before this court filed another application with the Commission, which was treated by the Commission as a request to amend the 1970 order to set forth additional protections for nearby operators and to suspend, if necessary, its authorization of Phillips' Smackover Unit operation until the unit's operations conformed to that amended order. After a full hearing, the Commission found in pertinent part:

7. That the total evidence presented at said hearing is insufficient to establish that the production of such off-set or nearby operators has been endangered or otherwise damaged as the consequence of the conduct of the operations in carrying out the development of the unitization.

8. That the application as filed and which is the subject matter hereof should be denied; provided, however, that the staff of the Commission should be directed to investigate and determine a testing procedure * * * for purposes of monitoring the movement of fluid and/or gas materials within the Nacatoch Formation.

The Richardson group sought review of the Commission's 1979 denial of its application in Arkansas state district court. In

December 1982, the state court issued an order affirming the Commission's findings. In that order, the state court stated that "[the Richardson group's] rights to proceed against [Phillips] for any perceived damages to their property rights are not affected by the action of the Commission." Neither party appealed the state court's order.

In January 1981 the Richardson group filed a civil tort action for trespass, nuisance, and negligence in Arkansas state court, seeking compensatory and punitive damages from Phillips for alleged damage to their property's productivity due to Phillips' secondary recovery operation. On Phillips' motion, the suit was removed to federal district court. Phillips then moved the district court for dismissal of the action on collateral estoppel grounds, arguing that the Commission's prior administrative findings barred litigation of the facts and issues raised in the Richardson group's tort action. The district court[1] denied Phillips' motion to dismiss, finding that the Richardson group's tort action sought money damages, which the Commission is not authorized to grant. The district court's denial was also based on its finding that the issue before the Commission was whether its prior order authorizing Phillips' secondary recovery operation should be modified or revoked, a question different from the breach of duty issues pleaded in the Richardson group's tort complaint.

Phillips next moved for summary judgment, partial summary judgment, and a declaration that the findings made by the Commission in its prior proceedings are established and binding between the parties in the tort action by virtue of collateral estoppel. In December 1984, the district court, with a different judge presiding,[2] denied Phillips' motion for summary judgment, reaffirming the prior district court finding that the Richardson group was not barred from bringing its action for money damages on res judicata grounds. However, finding "that the Commission acted in

a judicial, or quasi-judicial, capacity when it conducted the prior hearings and rendered its findings of fact and conclusions of law", the district court did grant partial summary judgment on behalf of Phillips. The district court stated that even if the Commission's 1979 order did not in itself preclude litigation of the facts and issues raised in the complaint, the state court's December 1982 order affirming the Commission's 1979 order would have collateral estoppel effect. The district court concluded:

> Even though the prior adjudications before the Oil and Gas Commission did not involve a claim for damages, at least the findings of fact and issues necessarily decided must be given collateral estoppel effect in the instant lawsuit.
>
> \*  \*  \*  \*  \*  \*
>
> Plaintiffs are directed to file an amended complaint within 20 days of the entry of this order alleging with specificity any issues which are not barred by the preclusive effect of the collateral estoppel ruling in this order.

In amending its pleadings as directed by the district court, the Richardson group stated that it was "unable to allege with specificity any issues which are not barred by the preclusive effect of the collateral estoppel ruling in the Court's Order." The district court dismissed the amended complaint. This appeal followed.

**Discussion**

The issue on appeal is whether the Richardson group's state tort action is barred because the essential facts to be litigated in that action were necessarily decided by the Commission so that the Commission's findings, affirmed by the state court, should be given collateral estoppel effect.

■ Collateral estoppel is an issue of substantive law requiring the application of state law in diversity actions. *Kuehn v.*

1. The Honorable Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas, presiding.

2. The Honorable William R. Overton, United States District Judge for the Western District of Arkansas, presiding.

*Garcia,* 608 F.2d 1143, 1147 (8th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980). Arkansas courts have applied collateral estoppel in the context of certain state administrative adjudications to preclude the litigation of identical fact issues in a subsequent judicial proceeding. Following the Supreme Court's statement in *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the Arkansas Supreme Court has recognized that:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

*Rainbolt v. Everett,* 6 Ark.App. 204, 639 S.W.2d 532, 534 (1982) (quoting *Utah Construction,* 384 U.S. at 422, 86 S.Ct. at 1560.

Arkansas law instructs that Phillips, as the party seeking to invoke collateral estoppel or "issue preclusion," a doctrine related to but distinct from questions involving claim extinguishment, *see, e.g., Smith v. Roane,* 284 Ark. 568, 683 S.W.2d 935, 936 (Ark.1985), has the burden to demonstrate that the precise issue on which it claims that the court and other parties are bound and which is precluded from being litigated was decided in the previous proceeding. *Smith,* 683 S.W.2d at 936 (citing *JeToCo Corp. v. Hailey Sales Co.,* 268 Ark. 340, 596 S.W.2d 703, 706 (Ark.1980)). In *JeToCo,* the Arkansas Supreme Court explained that "the true test of whether a particular point, question or right has been concluded by a former suit and judgment is whether such point, question or right was distinctly put in issue, or should have been put in issue, and was directly determined by such former suit and judgment." *JeToCo,* 596 S.W.2d at 706. After reviewing the record and applicable Arkansas law, we find that the district court erred in failing to conclude that there is not a sufficient identity of issues between those distinctly litigated and necessarily decided in the Commission hearings and the issues raised in the state law proceedings to allow application of the collateral estoppel doctrine here.

■ In conducting our review, we deem it relevant to examine the scope of authority granted to the Commission by the Arkansas legislature. It is well recognized that when a legislature's scheme of remedies demonstrates that the proceedings in an administrative tribunal are determinative only for purposes of the controversy immediately before the agency, the rule governing issue preclusion does not apply. *See* Restatement (Second) of Judgments § 83, comment h (1982) (incorporating Restatement (Second) of Judgments §§ 27 and 28). Although the Commission is plainly not a court, it was created by the Arkansas legislature and endowed by that body with quasi-judicial functions. *See Rainbolt,* 639 S.W.2d at 534 (finding res judicata principles may apply to quasi-judicial proceedings before the Arkansas Employment Security Division, Board of Review). The policies underlying the establishment of Arkansas' Oil and Gas Commission are to protect public and private interests against recognized evils occurring in the production and use of oil and gas, to compel ratable production, and to prohibit waste. Ark. Stat.Ann. § 53–101 (1971). As a state administrative agency with a statutory mandate to conserve Arkansas' natural resources, the measures enumerated in the Commission's enabling act are the exclusive means by which the Commission can attain that goal. *See Dobson v. Arkansas Oil and Gas Commission,* 218 Ark. 160, 235 S.W.2d 33, 36 (Ark.1950). The Commission's powers include the authority to make, after hearing and notice, "such reasonable rules, regulations and orders as may be necessary from time to time in the proper administration and enforcement of this act" and lists a variety of regulatory, administrative, and enforcement functions delegated to the Commission. Ark.Stat. Ann. § 53–111 (Supp.1985). By its terms, however, the statute does not contemplate that the Commission can adjudicate and award money damages.

It is plain that a prior tribunal's findings should not be given preclusive effect if the issues determined in the first case are not the same as those to be determined in the second. *See Smith,* 683 S.W.2d at 936. In evaluating whether the issues adjudicated in an administrative hearing are substantially different from those raised in a subsequent court action, the weight given the facts in each proceeding and the applicable proof burdens are highly relevant. *See* 4 K. Davis, Administrative Law Treatise § 21.5 (2d ed. 1983); *cf. Smith,* 683 S.W.2d at 936–37 (no collateral estoppel effect because first tribunal's finding of intent to protect oneself from injury for self-defense purposes different from intent or expectation of injury caused by one's act). Moreover, in order to determine what has been adjudicated, resort may be made to the record developed in the prior case's proceedings. *See JeToCo,* 596 S.W.2d at 707.

The Commission's November 1979 deliberations, on which the order sought to be given collateral estoppel effect here was based, reveal that the Commission members were well aware of the statutory constraints to their review of the facts and fashioning of a remedy. When one of the Commission members asked at the very beginning of the deliberations what the Commission's alternatives were, the hearing officer explained:

I think that the Commission can either find that on the one extreme [the 1970 order] and the conditions imposed upon Phillips with respect to [the Smackover Unit] under the terms of that order have been fully performed and that the application should be denied; to the other extreme that you find a violation of that order to be to the extent that you would have the authority to set aside the unit.

Now within the middle ground necessarily there would be the area that has been touched upon during the course of the presentation of the imposition of further reporting requirements either by Phillips or by the applicants.

\* \* \* \* \* \*

I don't think any member of this Commission wants to strike down the unit. I really don't feel that that is what the applicants want done, is to destroy the unit.

But neither does any member of this Commission wish to see any offset lease operator prejudiced or hurt in any way with regard to the unit operations.

The bulk of the Commission's deliberations were devoted to devising a test for determining whether Phillips' injections were in fact migrating to the Richardson group's adjacent wells, with a consensus reached that the Commission would either approve or disapprove the Richardson group's petition *as applied for* with a concurrent order that some method of testing for monitoring migration, if any, from Phillips' unit would be implemented. The thrust of the hearing testimony, in the Commission's eyes, was whether the 1970 unitization order should "be withdrawn and the unit terminated as the method of proposed operation cannot be conducted whereby it will not adversely affect, [sic] offset and nearby operators."

Moreover, the Richardson group's alternative prayer for payment of damages was recognized by the Commission members as outside the scope of their authority. Several times during the Commission's deliberations after the close of the evidence, the issue of awarding money damages to the Richardson group in lieu of injunctive relief was raised but repeatedly dismissed with an express acknowledgment that the Commission members were not weighing the facts for purposes of determining damages because the Commission did not have the statutory authority to award money damages.

The Commission members thus clearly understood that they were narrowly constrained to assess the evidence for purposes of fashioning injunctive relief. As the hearing officer stated on behalf of the other Commission members, "if [a testing method] is obtainable, [sic] then [we shall] enter an order which I assume would be the request of the applicants since the prayer is for the termination of the unit

and no one has indicated that is their disposition." The deliberations also illustrate that the Commission members understood the substantive difference between the level of proof required to completely enjoin Phillips' operation and the entirely different proof burden applicable to resolving a claim for monetary damages in tort. We find it significant that in the Commission's 1976 order denying the Richardson group's first request for injunctive relief, it found that the Richardson group had not proven they had been "irreparably harmed." The Commission's deliberations convincingly demonstrate that a finding that the Richardson group was damaged in some way short of irreparable harm compelling injunctive relief was simply not essential to the findings contained in the Commission's 1979 order. A finding of damage to the Richardson group short of irreparable damage for injunctive purposes was never decided by the Commission.

The Arkansas Supreme Court has previously recognized the incompatibility of legal concepts and proof burdens applicable in an action to enjoin a secondary recovery operation and those appropriate to an action for trespass of a mineral field which seeks an award of compensatory damages to make the allegedly injured party whole. In *Jameson v. Ethyl Corp.*, 271 Ark. 621, 609 S.W.2d 346 (Ark.1980), the Arkansas Supreme Court held that:

> reasonable and necessary secondary recovery processes of pools of transient materials should be permitted, when such operations are carried out in good faith for the purpose of maximizing recovery from a common pool. The permitting of this good faith recovery process is conditioned, however, by imposing an obligation on the extracting party to compensate the owner of the depleted lands for the minerals extracted in excess of natural depletion, if any, at the time of taking and for any special damages which may have been caused to the depleted property. By this holding we

believe that the interests of the owners and the public are properly protected and served.

*Jameson,* 609 S.W.2d at 351.

We hasten to note that there are likely many instances in which it might be appropriate to find that the Commission's findings have a collateral estoppel effect on the litigation of issues in a related state court action. *See, e.g., Katter v. Arkansas Louisiana Gas Co.,* 765 F.2d 730, 733 (8th Cir. 1985). We also agree with the district court that in some circumstances administrative determinations which have been upheld on judicial review are entitled to special deference for collateral estoppel purposes. *See Bockman v. Arkansas State Medical Board,* 229 Ark. 143, 313 S.W.2d 826, 829 (Ark.1958). However, we do not view the Richardson group's tort complaint to be an attempt to relitigate facts and issues already determined. *Cf. Wells v. Arkansas Public Service Commission,* 272 Ark. 481, 616 S.W.2d 718, 719 (Ark.1981) ("One fair trial on the merits of the case is all [the parties] are entitled to.") The degree of actionable harm to be proved in each proceeding is quite different; the limits to each tribunal's powers to evaluate the alleged harm and to construct an appropriate remedy vary greatly. After reviewing the record and the statutory scope of authority delegated to the Commission, we believe there is more than a de minimus difference between the issues raised and the weight to be given the facts in the two actions. It does not appear from the record that the Commission resolved the factual issue of "damage" to the same extent and in a means clearly necessary for the state court tort action. Our evaluation of the record, review of the administrative proceedings, and study of the applicable law convinces us that the findings of the Commission in its 1979 order denying injunctive relief should not preclude litigation of the fact questions and issues raised in the subsequent state tort action brought by the Richardson group.[3]

3. The Richardson group also argues on appeal that because no appeal was taken by Phillips

from the state court's statement in its December, 1982 order, affirming on appeal the Commis-

As applied to the facts before us, it is clear that the collateral estoppel doctrine is no bar to the Richardson group's suit for damages. We reverse the judgment of the district court and remand for plenary trial of the claims stated in the Richardson group's complaint.

FAGG, Circuit Judge, dissenting.

In 1970, the Arkansas Oil and Gas Commission authorized Phillips Petroleum to establish a secondary oil recovery project. As an express condition of that authorization, Phillips was forbidden from operating the recovery project in a manner that would damage or endanger the production of nearby oil fields.

In 1979, the Richardson group (containing the identical parties involved in the present action) instituted proceedings against Phillips before the Oil and Gas Commission. Asserting that the operation of the Phillips' recovery project had endangered and damaged the productivity of their oil wells, the Richardson group sought injunctive relief against Phillips.

In response to the Richardson group's complaint, the Oil and Gas Commission gave public notice of the complaint and conducted a public hearing. At that hearing, both parties were represented by counsel. Additionally, both parties made opening and closing statements, introduced evidence, and called witnesses who were subject to direct and cross-examination. Central to the entire proceeding before the Commission was the issue of whether the interests of the Richardson group had been damaged sufficiently to warrant injunctive relief against Phillips Petroleum.

After considering all evidence presented, the Oil and Gas Commission denied the relief requested by the Richardson group. In reaching that result, the Commission expressly found the Richardson group had failed to establish that its oil interests had been damaged by Phillips Petroleum. In fact, the Commission found that the Richardson group had even failed to show that its oil interests had been endangered by the conduct of Phillips Petroleum.

As was its right under Arkansas law, the Richardson group sought judicial review of the Oil and Gas Commission's decision in Arkansas state court. However, before receiving any determination by that court, the Richardson group instituted the present action in January of 1981.

In December of 1982, the Arkansas state court affirmed the action taken by the Commission. Significantly, in its decision affirming the Commission's ruling, the state court recognized the Commission's express finding that the interests of the Richardson group had not been damaged by Phillips Petroleum. The state court found further that this finding was supported by substantial evidence.

Obviously, Phillips Petroleum, in whose favor judgment was entered, did not appeal the decision of the Arkansas state court. The Richardson group, although having incentive to do so, also failed to appeal the state court's decision.

In August of 1984, Phillips Petroleum, on the basis of the 1979 Oil and Gas Commission ruling as affirmed by the Arkansas state court, filed a motion for summary judgment. That motion was based on theories of claim preclusion (res judicata) and issue preclusion (collateral estoppel). The district court properly recognized (as had the state court) that the Richardson group's right to bring a damage claim was not affected by the Commission's refusal to award injunctive relief. Thus, the district court found that the Richardson group's damage claim was not barred by claim preclusion.

However, the district court also recognized that the Commission's denial of the Richardson group's injunctive claim was

sion's 1979 order, that the Richardson group's right to proceed in tort was not affected by the Commission's actions, that finding by the state court is conclusive as the law of the case and precludes the application of collateral estoppel

here. Because we find for the Richardson group on collateral estoppel grounds, we need not address the law of the case issues raised here.

based in part on an express finding that the Richardson group had not been damaged by the actions of Phillips Petroleum. Without question, the issue of damages was at the very heart of the proceedings before the Commission. Given the adjudicatory nature of the prior administrative proceedings, at which the Richardson group had the opportunity to litigate fully the damage issue, and given further that the Commission's express finding of no damage had been specifically affirmed on judicial review, the district court held that under Arkansas law the Richardson group was collaterally estopped from relitigating in the present action the same damage issue already adjudicated.

The district court then gave the Richardson group the opportunity to assert issues not barred by its ruling. In response, the Richardson group did not assert that the damage issue in the present case was somehow distinguishable from the damage issue adjudicated in the prior administrative proceeding (*i.e.* involving a different burden of proof or different evidence). The Richardson group also failed to assert that actions of Phillips Petroleum occurring after the Commission's ruling created some new and distinct claim for damages. Rather, the Richardson group admitted that no issue existed beyond that barred by the district court's ruling. By so doing, the Richardson group effectively conceded that the damage issue expressly resolved by the Oil and Gas Commission was identical to the damage issue presented in its federal action.

Under Arkansas law, collateral estoppel will bar the relitigation of an issue if the party asserting its applicability demonstrates that the issue in question was distinctly raised and directly determined in an earlier adjudicatory proceeding. *JeToCo Corp. v. Hailey Sales Co.*, 268 Ark. 340, 596 S.W.2d 703, 706 (1980); *see also Smith v. Roane*, 284 Ark. 568, 683 S.W.2d 935, 936 (1985). That doctrine is equally applicable when the prior proceeding involved an administrative body acting in its quasi-judicial function. *Rainbolt v. Everett*, 6 Ark.App. 204, 639 S.W.2d 532, 534 (1982)

(citing *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). Such deference to an administrative body is particularly warranted when an issue expressly decided by the administrative body has been specifically upheld on judicial review. *See Bockman v. Arkansas State Medical Board*, 229 Ark. 143, 313 S.W.2d 826, 829 (1958).

Here, the record clearly demonstrates that the Richardson group in the proceeding before the Oil and Gas Commission raised and fully litigated the issue of damages. Further, during that proceeding the group had the incentive and the opportunity to present evidence of any and all damage to its oil interests.

After considering the evidence presented at the adjudicatory hearing, the Commission denied injunctive relief to the Richardson group. That denial, however, was not based on a finding that while damaged the Richardson group's interests were not so irreparably harmed as to warrant injunctive relief. Rather, the Commission's denial was based on the specific finding that the Richardson group had not been damaged or even endangered by the Phillips' operation. The Commission's express finding of no damage was affirmed by an Arkansas state court.

I agree with the district court that these determinations are binding on the Richardson group. The Oil and Gas Commission's finding of no damage not only supports and was central to its decision but also fatally undermines the Richardson group's identical assertion of damage in the present action. Because the Richardson group has received and has taken advantage of a full and fair opportunity to litigate the damage issue, I conclude the district court's dismissal of the Richardson group's complaint on the basis of collateral estoppel should be affirmed.