ARNOLD, Circuit Judge.
 

 In this adversary bankruptcy proceeding, the Bankruptcy Court held that Lonoke Production Credit Association had a security interest in the proceeds of certain crops grown by the bankrupt. The District Court affirmed. The trustee of the bankrupt estate appeals. He claims that the PCA’s status as a secured creditor is precluded both by the legal insufficiency of the collateral description in its security agreement and financing statement, and also by a former adjudication of the Supreme Court of Arkansas. We agree with his contention that the Arkansas court’s unpublished decision in
 
 Lonoke PCA v. Jean Carnation,
 
 No. 77-225 (Ark. Feb. 20, 1978), is conclusive against PCA’s status as a secured creditor, and we therefore reverse the judgment without addressing the merits of the description issue.
 

 I.
 

 A brief review of the factual background is necessary to an understanding of the legal issues.
 
 [1]
 
 In 1975 the bankrupt, Owen C. Glass, made a series of loans from the Lonoke PCA in order to finance his farming operations in Perry County, Arkansas. The PCA financed Glass’s operation again in 1976 and received a security interest in crops and equipment and the proceeds of both to secure the indebtedness. A financing statement was filed with the Circuit Clerk of Perry County on May 5, 1976, which contained the following description of the two farms on which Glass’s crops were to be grown:
 

 Name of Farm Occupant Location
 

 Owen Glass Occupant 4 mi. W. Perryville, AR
 

 Winrock Farms No one 1 mi. S.E. Oppelo, AR
 

 The Bankruptcy Court held this description sufficient to satisfy the requirements of the Uniform Commercial Code, Ark.Stat.Ann. § 85-9-402(1), and that the lien had therefore been perfected. The court relied on
 
 United States v. Oakley,
 
 483 F.Supp. 762 (E.D.Ark.1980), and found the land description at issue indistinguishable from that approved in
 
 Oakley.
 
 We do not reach this issue, because the PCA is estopped to reliti-gate its entitlement to the lien by the judgment in earlier litigation in which it participated in the Arkansas state courts.
 

 Mr. Glass’s 1976 crop was apparently placed with Keenan Cotton Gin and Grain Elevator, Inc., which was also a defendant in the adversary proceeding below. At some point, the precise timing of which is unclear from the record, one Jean Carnation filed a writ of garnishment, which was based on state court litigation between her and Glass, against a portion of the crop held by Keenan. The garnishment action in the Circuit Court of Pulaski County, Arkansas, evidently either preceded the filing of the Glass bankruptcy petition in 1977, or else was allowed to proceed by the Bankruptcy Court.
 
 [2]
 
 In any event, Lonoke PCA answered the garnishment action, alleging that its financing statement filed in Perry County on May 5,1976 (the same one here at issue), created a perfected security interest in the crops or proceeds held by Keenan. The Pulaski Circuit Court found that the crops involved had not been properly identified as having been grown on the farms listed in the financing statement. It therefore held in favor of Carnation and against PCA’s claim of a security interest. On PCA’s ap
 
 *1117
 
 peal, this decision was affirmed by the Arkansas Supreme Court in an unpublished opinion,
 
 Lonoke Production Credit Association v. Carnation,
 
 No. 77-225 (Feb. 20, 1978).
 
 [3]
 

 II.
 

 Although the briefs addressed primarily to the sufficiency of the collateral description in the financing statement, and only secondarily to the problem of issue preclusion, we think the latter is the controlling issue in the case. The precise question is whether under Arkansas law, which governs the effect of an Arkansas state-court judgment, the
 
 Carnation
 
 case, to which the PCA was a party but the trustee was not, should collaterally estop the PCA to reliti-gate the validity of its security interest in the Owen Glass assets held by the Keenan Cotton Gin. Our duty is to decide the case as we believe the Arkansas appellate courts would under these circumstances. Any lack of clear guidance on collateral estoppel in Arkansas law does not excuse this Court from its duty.
 

 The question whether one not a party to a prior litigation may take advantage of a judgment, in subsequent litigation, to bind one who was a party to the result reached on an issue actually litigated has traditionally been answered by the phrase “mutuality of estoppel.” In former times it was generally held that in order for one party to be bound by a prior adjudication, both must be bound.
 
 Restatement of Judgments
 
 § 93 (1942). Therefore, with a few exceptions, a non-party could not take advantage of the previous litigation, since he was not, and constitutionally could not be,
 
 [4]
 
 bound by the earlier result. The rule requiring mutuality of estoppel has not, however, enjoyed universal support. It came under attack as early as 1942 with Justice Traynor’s noted opinion in
 
 Bernhard v. Bank of America,
 
 19 Cal.2d 807, 122 P.2d 892 (1942). In that decision the California Supreme Court rejected the mutuality requirement in its entirety.
 
 Bernhard
 
 has had a significant impact on the development of the law. It has, however, never been cited by the Arkansas appellate courts. Nonetheless, we think that
 
 Bernhard
 
 and its progeny must be discussed before we can predict how the Arkansas courts would deal with these facts.
 

 The complaint in
 
 Bernhard v. Bank of America, supra,
 
 was filed by the second administratrix of an estate, who was also a beneficiary under the will, against the successor corporation of a bank which had held funds for the decedent. The plaintiff alleged that the bank had wrongly paid the funds over to the previous administrator of the estate without the decedent’s authorization. The bank pleaded res judicata as a defense in that the probate court had previously found that the decedent had made a gift of the money to the former administrator of the estate. The plaintiff demurred to this defense, arguing that since the bank was not a party to the probate proceedings, there was no mutuality of estoppel. Despite this lack of mutuality, the California Supreme Court found “no compelling reason ... for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.”
 
 Id.
 
 at 812, 122 P.2d at 894. The mutuality rule, Justice Traynor reasoned, should be replaced with three inquiries. “In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?”
 
 Id.
 
 at 813, 122 P.2d at 895. Each of these questions could be answered affirmatively in
 
 Bernhard,
 
 and the defense was held good.
 

 
 *1118
 
 The
 
 Bernhard
 
 analysis was accepted by a number of state and federal courts which reviewed the issue over the next thirty years.
 
 E.g., Zdanok v. Glidden,
 
 327 F.2d 944 (2d Cir.1964);
 
 Bruszewski v. United States,
 
 181 F.2d 419 (3d Cir.),
 
 cert, denied,
 
 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950)
 
 [5]
 
 ;
 
 LaRose v. Casey,
 
 570 S.W.2d 746 (Mo.App.1978);
 
 B.R. Dewitt, Inc. v. Hall,
 
 19 N.Y.2d 141, 225 N.E.2d 195, 278 N.Y.S.2d 596 (1967). More importantly, the
 
 Bern-hard
 
 view, with some refinements, has been adopted in two relatively recent decisions by the Supreme Court of the United States,
 
 Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,
 
 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and
 
 Parklane Hosiery v. Shore,
 
 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and in the new Restatement (Second) of Judgments (1982).
 

 Blonder-Tongue Laboratories
 
 presented the Court with the opportunity to reconsider the often criticized rule of
 
 Triplett v. Lowell,
 
 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), which had held that a patentee whose patent had been invalidated in one circuit could nonetheless bring another infringement suit in another circuit against a different defendant because of the lack of mutuality of estoppel. The patentee in
 
 Blonder-Tongue
 
 had done exactly that, securing a judgment in his favor in the Seventh Circuit after this Court had held the patent invalid as obvious. The Court determined to overrule
 
 Triplett v. Lowell, supra,
 
 and the Seventh Circuit’s judgment was vacated.
 
 [6]
 
 Justice White’s opinion for the unanimous court noted that “the court-produced doctrine of mutuality of estoppel is undergoing fundamental change in the common-law tradition.” 402 U.S. at 327, 91 S.Ct. at 1442. “[Ujncritical acceptance of the principle of mutuality of estoppel expressed in
 
 Triplett v. Lowell,”
 
 he stated, “is today out of place.”
 
 Id.
 
 at 350, 91 S.Ct. at 1453.
 

 The limits of collateral estoppel were expanded further in
 
 Parklane Hosiery v. Shore, supra,
 
 in which the Court approved what has come to be known as the offensive use of the doctrine.
 
 Parklane
 
 was filed as a shareholder’s derivative suit against the directors of a corporation over the filing of an allegedly false and misleading proxy. Before this shareholder’s suit came to trial, the Securities and Exchange Commission filed its own suit for injunctive relief against the same defendants over the same false proxy. The S.E.C. suit came to trial first and the Commission prevailed.
 
 S.E.C. v. Parklane Hosiery Co.,
 
 422 F.Supp. 477 (S.D.N.Y.1976),
 
 aff’d,
 
 558 F.2d 1083 (2d Cir.1977). The shareholder plaintiffs then moved for partial summary judgment on the basis of the judgment in the S.E.C. litigation. The Court of Appeals, reversing the District Court, held that the defendants were collaterally estopped to relitigate the facts determined against them in the prior litigation, and that partial summary judgment was therefore proper. The Supreme Court framed the issue as “whether a litigant who was not a party to a prior judgment may nevertheless use that judgment ‘offensively’ to prevent a defendant from relitigating issues resolved in the earlier proceeding.” 439 U.S. at 326, 99 S.Ct. at 649 (footnote omitted). Justice Stewart’s opinion for the Court characterized
 
 Blonder-Tongue
 
 as an abandonment, at least in patent cases, of the mutuality doctrine. He then discussed the various factors
 
 [7]
 
 which might militate against application of collat
 
 *1119
 
 eral estoppel in either its offensive or defensive forms,
 
 [8]
 
 and concluded that offensive application of the doctrine should be within the discretion of the district courts. On the facts of
 
 Parklane,
 
 the Court found no reason not to apply collateral estoppel against the defendants, since they had every reason and opportunity to litigate the earlier S.E.C. suit with full vigor.
 

 The doctrine developed in
 
 Bernhard, Blonder-Tongue,
 
 and
 
 Parklane
 
 has now been incorporated in the Restatement (Second) of Judgments (1982). Section 29 of the new Restatement provides:
 

 § 29. Issue Preclusion in Subsequent Litigation with Others
 

 A party precluded from relitigating an issue with an opposing party, in accord-. anee with §§ 27 and 28, is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which consideration should be given include those enumerated in § 28 and also whether:
 

 (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
 

 (2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
 

 (3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in
 

 the first action between himself and his present adversary;
 

 (4) The determination relied on as preclu-sive was itself inconsistent with another determination of the same issue;
 

 (5) The prior determination may have been affected by relationships among -the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
 

 (6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
 

 (7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
 

 (8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
 
 [9]
 

 III.
 

 We have searched the
 
 Arkansas Reports
 
 in vain for directly controlling authority on the issue now before us. While many Arkansas cases contain thorough discussions of some aspects of res judicata, there is relatively little authority on collateral estoppel or issue preclusion. Neither
 
 Bernhard, supra, Blonder-Tongue, supra,
 
 nor
 
 Parklane Hosiery, supra,
 
 has ever been the subject of comment by either the Arkansas Supreme Court or the Arkansas Court of Appeals. We do not think, however, that the lack of any such discussion necessarily indicates any disapproval of these holdings by the Arkansas courts,
 
 [10]
 
 especially in light of the
 
 *1120
 
 importance which the Arkansas Supreme Court has traditionally attached to the Restatement of Judgments. Existing state law will be examined in light of these developments.
 

 A.
 

 In Arkansas the general rule has been that mutuality of estoppel is required.
 
 Davis v. Perryman,
 
 225 Ark. 963, 286 S.W.2d 844 (1956). The court has, however, found exceptions to this rule on more than one occasion. In
 
 Davis v. Perryman,
 
 for example, the court was faced with a wrongful death suit against a truck driver based on his negligence. The defendant responded that the plaintiff had already sued the driver’s employer for the decedent’s negligence and had lost before a jury. The previous adjudication was pleaded as res judicata, and the Arkansas Supreme Court agreed. Where “the plaintiff has already had a full and complete trial of the cause of action against one party and the action against the second party is derivative from the first, then there is an exception to the general rule requiring mutuality in estop-pel.”
 
 Id.
 
 at 970-71, 286 S.W.2d at 848. Although not using the term collateral es-toppel, the court’s holding in
 
 Davis
 
 amounts to exactly that. The plaintiff had had a full and complete opportunity to litigate the issue of the deceased driver’s negligence in a previous suit. Having lost on that issue before, the plaintiff was precluded from retrying the same issue with a different defendant. .
 

 Ted Saum & Co. v. Swaffar,
 
 237 Ark. 971, 377 S.W.2d 606 (1964), presented a similar problem in a somewhat different context. There the Court held that an earlier suit for conversion by the appellee Swaffar against Ted Saum, individually, barred the instant cross-claim for conversion against Ted Saum and Company, a corporation. The court saw the case as one of agency — the company was alleged to be liable based on the acts of Ted Saum — and relied on the principle of
 
 Davis v. Perryman, supra.
 
 The court also emphasized that privity is not a requirement for application of res judicata in Arkansas:
 

 ‘one whose liability is dependent on, or derived from, the liability of one who was exonerated in an earlier suit brought by the same plaintiff on the same facts may take advantage of the bar of the prior judgment
 
 even though he was not a party to the earlier action or in privity with the defendant therein.’
 
 (emphasis in original).
 

 237 Ark. at 973-74, 377 S.W.2d at 607, quoting 50 C.J.S.
 
 Judgments
 
 § 757, at 277.
 

 Additionally, the Arkansas Supreme Court has made clear that neither privity nor an agency relationship between the successive defendants is a prerequisite to application of res judicata.
 
 Rose v. Jacobs,
 
 231 Ark. 286,329 S.W.2d 170 (1959). In a somewhat convoluted procedural context,
 
 Rose
 
 presented the Court with the question whether a prior action for possession of real property against A. and B., who were brother and sister, could be raised as a defense in a subsequent similar action by the same plaintiff against A. and C., who were husband and wife. The second suit should not be barred, the plaintiff argued, because C. was not a defendant in the former action and was therefore not bound by it. Thus, the argument ran, there was no mutuality of estoppel. The Court found the difference in parties to be of little significance; more important was the fact that the plaintiff had had his day in court, and the identical issue,
 
 i.e.,
 
 his entitlement to certain real estate, had been resolved against him. The court in
 
 Rose
 
 explained at some length the justification for applying issue preclusion even in the absence of identity of parties:
 

 ‘... [T]he true reason for holding an issue res judicata is not necessarily the identity or privity of the parties, but the policy of the law to end litigation by preventing a party who has had one fair trial of a question of fact from again drawing it into controversy, and that a plaintiff who deliberately selects his forum is bound by an adverse judgment therein in a second suit involving the same issues, even though defendant in
 
 *1121
 
 the second suit was not a party, nor in privity with a party, in the first suit.’
 

 Id.
 
 at 289, 329 S.W.2d at 172, quoting 50 C.J.S.
 
 Judgments
 
 § 763, at 291. See also
 
 Ted Saum & Co., supra,
 
 237 Ark. at 974,377 S.W.2d at 608;
 
 Sides v. Haynes,
 
 181 F.Supp. 889, 896 (W.D.Ark.1960) (same language quoted).
 

 The PCA argues vigorously that application of collateral estoppel to them under these circumstances would be an
 
 offensive
 
 use of the doctrine, and therefore one which the Arkansas courts are least likely to allow. Such a characterization is, however, not entirely appropriate. The Restatement refers to offensive collateral estoppel as a use “to determine an issue pertinent to the liability of one who is a defendant, particularly when he was also defendant in the first action.” Restatement (Second) of Judgments, § 29 reporter’s note (1982). In this case the PCA is procedurally a defendant in both this and the
 
 Carnation
 
 suit. But neither that suit nor this action seeks to establish liability, in the narrow sense, on the part of the PCA. Moreover, the Restatement further notes that “the distinct-trend if not the clear weight of recent authority is to the effect that there is no intrinsic difference between ‘offensive’ and ‘defensive’ issue preclusion, although a stronger showing that the prior opportunity to litigate was adequate may be required in the former situation than the latter.”
 
 Id.
 
 at 299-300. The PCA has not suggested that it was not afforded an adequate opportunity to litigate against Jean Carnation in the prior action.
 

 IV.
 

 We think these and other Arkansas cases we have reviewed have two clear implications. First, the Arkansas Supreme Court is not wedded to the notion of mutuality of estoppel as a prerequisite to application of res judicata principles. Second, the notion of collateral estoppel or issue preclusion has been dealt with functionally by the Court and often subsumed under the rubric of res judicata. These factors, as well as the Arkansas Supreme Court’s frequent citation to the Restatement of Judgments
 
 [11]
 
 as a source of authority, lead us to the belief that the Arkansas courts would not ignore the significant legal doctrines developed most fully in
 
 Blonder-Tongue Laboratories v. University Foundation, supra, Parklane Hosiery v. Shore, supra,
 
 and the new Restatement (Second) of Judgments § 29 (1982).
 

 The application of estoppel found in
 
 Rose v. Jacobs, supra,
 
 is particularly significant for the facts of this case. In
 
 Rose
 
 the substantive issue in the first litigation had been the plaintiff’s entitlement to certain property. He lost on that issue and was precluded from relitigating it even in the absence of strict mutuality. In this case the issue in the former litigation was also the entitlement of one party, the PCA, to certain property. That issue was resolved against it in
 
 Jean Carnation v. Lonoke PCA, supra.
 
 We believe that the PCA has had the “one fair trial of a question of fact” to which the court referred in
 
 Rose v. Jacobs, supra,
 
 as to its claimed security interest in the proceeds held by the Keenan Cotton Gin and Grain Elevator. That we might reach a different result on the merits of that security interest, as did the courts below in this case, is of no consequence. None of the factors enumerated in § 29 of the Restatement (Second) of Judgments, which would indicate that issue preclusion is somehow unfair, is applicable to allow the PCA to relitigate its security interest in the Bankruptcy Court.
 

 PCA had a full and fair opportunity to litigate in the state courts the validity of its lien, including the question of fact whether the crops involved came from the farms listed in the financing statement. We know of no procedural advantages available to it against the trustee in the Bankruptcy
 
 *1122
 
 Court, that were not equally available against Carnation in the Circuit Court of Pulaski County. We know of no reason why it would have more incentive to resist the trustee’s claim than it had to resist Carnation’s. The crops of Owen Glass stored at the Keenan Gin either came from the farms listed in the financing statement, or they did not. The courts of Arkansas, in deciding Carnation’s claim to garnish the proceeds of a certain portion of those crops, have concluded that they did not. The federal courts, in deciding the trustee’s claim as a hypothetical lien creditor to the proceeds of another such portion, have no good reason to reexamine that conclusion.
 

 The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.
 

 It is so ordered.
 

 [1]
 

 . This statement of the facts, which appear to be largely uncontested as to the dispositive issue, is drawn from the Bankruptcy Judge’s unpublished opinion. Designated Record (D.R.) 12.
 

 [2]
 

 . Neither party has taken issue in this appeal with the propriety of these proceedings in the Arkansas courts, despite the automatic stay which customarily accompanies the filing of a bankruptcy petition.
 

 [3]
 

 . Under the Rules of the Arkansas Supreme Court, an unpublished opinion may be cited only in continuing or related litigation on such issues as res judicata, collateral estoppel, or law of the case. Ark.Sup.Ct.R. 21. This case falls in that category.
 

 [4]
 

 . See
 
 Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation,
 
 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).
 

 [5]
 

 . We do not mean to imply that acceptance of the
 
 Bernhard
 
 doctrine has been unanimous.
 
 E.g., Standage Ventures, Inc. v. State,
 
 114 Ariz. 480, 562 P.2d 360 (1977);
 
 Lukács v. Kluessner,
 
 154 Ind.App. 452, 290 N.E.2d 125 (1972).
 

 [6]
 

 . The judgment was vacated and remanded with directions to allow the defendant to amend its pleadings to allege estoppel, which it had not done because of
 
 Triplett.
 
 402 U.S. at 350, 91 S.Ct. at 1453.
 

 [7]
 

 .Among those factors discussed were whether the present plaintiff could have joined as a plaintiff in the prior suit, whether use of the doctrine is unfair to the defendant because of the unforeseeability of a future suit, and whether the defendant was afforded the same procedural opportunities in the prior litigation as in the case at bar. See 439 U.S. at 330-31, 99 S.Ct. at 651.
 

 [8]
 

 .In
 
 Parklane,
 
 the Court stated:
 

 [Offensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.
 

 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4.
 

 [9]
 

 . The Reporter’s Note to this section speaks of the abrogation of the mutuality doctrine projected in
 
 Bernhard v. Bank of America, supra,
 
 as having “now gained general acceptance,” citing,
 
 inter alia, Blonder-Tongue, supra,
 
 and
 
 Parklane Hosiery, supra.
 

 [10]
 

 . See Note, 22
 
 Ark.L.Rev.
 
 491, 499 (1968).
 

 [11]
 

 . For cases citing various sections of the original Restatement, see,
 
 e.g., Matthews v. Travelers Indemnity Ins. Co.,
 
 245 Ark. 247, 432 S.W.2d 485 (1968);
 
 Fuller v. Fuller,
 
 240 Ark. 475, 400 S.W.2d 283 (1966);
 
 Adams v. Wood-fin,
 
 243 Ark. 348, 419 S.W.2d 796 (1967);
 
 Rose v. Jacobs,
 
 231 Ark. 286, 329 S.W.2d 170 (1959).