900 F.2d 1247
 Clift C. LANE, Individually, and as Trustee under the Clift
C. Lane Revocable Trust, and Dorothy P. Lane,
Individually, and as Trustee under the
Dorothy P. Lane Revocable
Trust, et al., Appellants,
v.
William B. SULLIVAN, Individually, and as a Partner of the
Law Partnership of Arent, Fox, Kintner, Plotkin &
Kahn, et al., Appellees.
 No. 89-2037.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 18, 1990.
Decided April 10, 1990.
 
 Timothy Dudley, Little Rock, Ark., for appellants.
 Ronald A. May, Little Rock, Ark., for appellees.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 This case is one of several involving claims by Appellants Dorothy and Clift Lane (the "Lanes") against various parties for alleged wrongdoing in the bankruptcy and sale of their poultry companies. Here the Lanes are suing their lawyer, William Sullivan, and his law firm, Arent, Fox of Washington, D.C. (collectively "Sullivan") for legal malpractice.
 
 
 2
 The Lanes appeal the grant of summary judgment to Sullivan entered by the district court[1] on the basis of collateral estoppel. The Lanes argue that the easier burden of proof (preponderance) to which they were subject in this suit forecloses the possibility of the preclusive effect of the prior judgment against them where they were subject to a higher burden of proof (clear and convincing). We disagree and affirm the district court on the basis of particular specific findings made in the earlier suit.
 
 I. BACKGROUND
 
 3
 Although we must review the facts in this case in the light most favorable to the Lanes because the case has come to us after a grant of summary judgment, the facts are already well laid out in several opinions, and we will not again recite them.[2] The short of the Lanes' trials for purposes of this case is as follows. After creating a successful poultry business over the course of several decades, things went sour and the Lanes filed for bankruptcy in 1982. They were represented in the bankruptcies by Sullivan. A Special Panel was appointed during the bankruptcy to run their companies in the event of certain defaults. The Special Panel stepped in sooner than called for by the terms of the bankruptcy plan on the condition that the Lanes sign over all their interest in stock of the Lane companies to the panel--in return the Lanes were to receive consulting fees. The Lanes signed over their interests, and the Special Panel began running the poultry businesses. An opportunity to sell the companies to a larger poultry concern presented itself, and the Special Panel did just that. As part of their complaints in both this and the earlier case, the Lanes allege that the Special Panel and Sullivan colluded to facilitate the sale of the Lane Companies before the Lanes actually transferred their holdings to the Special Panel.
 
 
 4
 The Lanes also complain that they did not understand the nature of the documents they signed when they transferred their stock to the Special Panel and were, in essence, cheated out of the profits from the sale of their companies. They sued the Special Panel members in federal district court in 1986 for breach of fiduciary duties under Arkansas law and requested the court to impose a constructive trust. The facts alleged in that complaint centered around the early transfer of control of the Lane Companies to the Special Panel, the transfer from the Lanes to the panel of the stock interests, and the sale of the companies. The district court[3] denied any relief, and a panel of this court affirmed in Lane v. Peterson, 851 F.2d 193 (8th Cir.1988) (hereinafter "Lane I ").
 
 
 5
 In this suit, the Lanes charged Sullivan and his law firm with legal malpractice based on the same facts alleged in their suit against the Special Panel. Because the facts were the same as in the earlier case, Sullivan filed a motion to deem facts admitted. The district court treated this as a motion for summary judgment on the basis of collateral estoppel.
 
 
 6
 Judge Arnold found that Judge Harris' specific finding made in the first case, that the Lanes understood the transfer documents, was a finding necessary to that judgment and one that the Lanes had already had a chance to fully and fairly litigate. Thus, Judge Arnold held that the Lanes were precluded from relitigating that issue. He rejected the Lanes' suggestion that preclusion could not obtain because of the different burdens of proof between Lane I and this case because the specific finding on the Lanes' understanding of the transfer documents was not affected by that changed burden. Judge Arnold concluded that the findings reached by Judge Harris in the first case were conclusively reached on the question of the Lanes' understanding. Consequently, Judge Arnold granted summary judgment to Sullivan and dismissed the Lanes' complaint with prejudice.
 
 II. DISCUSSION
 
 7
 The precise issue on this appeal is whether the findings made by Judge Harris in Lane I with respect to the Lanes' understanding of the transfer of their stock holdings to the Special Panel preclude a finding that Sullivan committed malpractice in his representation of the Lanes, despite the lesser burden of proof in this case. Put more simply, the issue is whether the Lanes are collaterally estopped from pursuing their malpractice claim by the findings from Lane I.
 
 
 8
 The threshold question for us, which was not addressed by the parties or the district court, is one of choice of law. Does federal or Arkansas law control the application of collateral estoppel in this case? The judgment from Judge Harris which is sought to be given preclusive effect was made by a federal district court sitting in diversity on claims under Arkansas law. Likewise, the district court below had jurisdiction of claims under Arkansas law by reason of diversity. Thus, should collateral estoppel apply, one federal court would be giving preclusive effect to the judgment of another federal court. That scenario seems to compel the conclusion that federal law should control. Hauser v. Krupp Steel Producers, Inc., 761 F.2d 204, 207 (5th Cir.1985) ("federal law governs the collateral estoppel effect of an earlier federal judgment, even in diversity cases.") (citation omitted).
 
 
 9
 However, cases from our court have consistently concluded that collateral estoppel in a diversity action is a question of substantive law controlled by state common law. In some of those cases the first judgment was from a state court or agency. Richardson v. Phillips Petroleum Co., 791 F.2d 641 (8th Cir.1986) (prior judgment was proceeding before Arkansas Oil and Gas Commission and was not given preclusive effect), cert. denied, 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987); Saporta v. Stephenson, 751 F.2d 312 (8th Cir.1985) (per curiam) (Nebraska state court judgment on doctor's negligence given preclusive effect); Kuehn v. Garcia, 608 F.2d 1143 (8th Cir.1979) (North Dakota Supreme Court disciplinary proceeding against attorney not given preclusive effect due to lack of mutuality required by recent North Dakota precedent), cert. denied, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980). Nevertheless, we do not believe that we can depart from this conclusion in this case simply because the first judgment here came from a diversity case in federal court rather than from a true Arkansas state court. Just as the law of Arkansas governs in its state courts, it governed in the cases before Judges Harris and Arnold sitting in diversity, and so it governs us in the application of collateral estoppel in this case. See Iowa Electric Light and Power Company v. Mobile Aerial Towers, 723 F.2d 50, 52 (8th Cir.1983) (affirming use of collateral estoppel based on diversity judgment and declaring state common law controlling without discussion).
 
 
 10
 Having determined that Arkansas law applies does not, unfortunately, get us much farther into our inquiry. There is a dearth of Arkansas case law on the use of collateral estoppel, and none whatsoever on the question of its use when burdens change from one suit to the next, as in this case. Arkansas law does characterize the elements of collateral estoppel in familiar language:
 
 
 11
 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) that issue must have been actually litigated; 3) it must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment.
 
 
 12
 East Texas Motor Freight Line v. Freeman, 289 Ark. 539, 543, 713 S.W.2d 456, 459 (1986) (citations omitted).
 
 
 13
 But that is little more than hornbook law, and it does not help answer the question of what the Arkansas courts would do with differing burdens of proof.
 
 
 14
 When faced with deciding what state law is without the benefit of precedent to guide us, "we [will] apply what we view as the optimal rule of collateral estoppel under the circumstances of th[e] case." Gerrard v. Larsen, 517 F.2d 1127, 1132 (8th Cir.1975). We have done this before with respect to the Arkansas law of collateral estoppel. In Davidson v. Lonoke Production Credit Assoc., 695 F.2d 1115 (8th Cir.1982), we concluded that, despite the general rule of mutuality of estoppel applied in Arkansas law, mutuality would not be required by the Arkansas courts in all cases.[4]
 
 
 15
 The Arkansas law of collateral estoppel outlined above clearly applies in this case. The issue in both the prior litigation before Judge Harris and in this case before Judge Arnold was whether or not the Lanes understood what they were doing when they transferred their stock holdings to the Special Panel. A finding that they did understand defeats both the first cause of action, based on fiduciary duty, and this one, based on legal malpractice.[5] The identity of issues is present. Whether the issue of understanding was actually litigated, determined in a final and valid judgment, and essential to that judgment are the remaining considerations. In Lane I the issue of understanding was litigated and essential to the final and valid judgment by Judge Harris. See Memorandum Opinion at 26, Appellants' Appendix at 72.
 
 
 16
 The fact that Sullivan was not a party to the first suit does not defeat collateral estoppel. Mutuality is not required so long as the Lanes had an incentive and a full and fair opportunity to litigate the issue of understanding before Judge Harris. See Davidson, 695 F.2d at 1120-21. We agree with Judge Arnold that they did. The issue of their understanding was something the Lanes tried and failed to disprove in their breach of fiduciary duty claim. In its simplest form, collateral estoppel precludes the Lanes in this case.
 
 
 17
 The interesting wrinkle, as we have already revealed, is whether collateral estoppel will apply even though the burden of proof was significantly higher in the first suit for the party facing preclusion in the second suit. In Lane I, the Lanes had to prove breach of fiduciary duty by clear and convincing evidence. Judge Harris found, inter alia, that they could not do so because they understood the documents of transfer of their stock holdings. In this case, the Lanes' burden of proof to show legal malpractice by Sullivan is only by preponderance. If they again are found to have understood the documents of transfer, then there was no malpractice by Sullivan. The Lanes argue that because they were found to have understood the transfer documents where their burden to show otherwise was by clear and convincing evidence they are not necessarily prevented from showing otherwise by a preponderance in this case. Therefore, they conclude collateral estoppel should not preclude litigation of Sullivan's negligence, even though the question of their understanding of the transfer documents will necessarily be relitigated.
 
 
 18
 This argument is supported by the Restatement (Second) where it sets out exceptions to the operation of collateral estoppel at Sec. 28:
 
 
 19
 Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
 
 
 20
 . . . . .
 
 
 21
 (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action....
 
 
 22
 Restatement (Second) of Judgments Sec. 28 (1980).
 
 
 23
 However, further comment in the Restatement reveals that there is room for exception to the black letter law outlined above, although such exceptions are not suggested.
 
 
 24
 To apply issue preclusion in the cases described in Subsection (4) would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden been imposed. While there may be many occasions when such a holding would be correct, there are many others in which the allocation and weight of the burden of persuasion (or burden of proof, as it is called in many jurisdictions) are critical in determining who should prevail. Since the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and different burden, preclusive effect is properly denied. This is a major reason for the general rule that, even when the parties are the same, an acquittal in a criminal proceeding is not conclusive in a subsequent civil action arising out of the same event.
 
 
 25
 Id. at comment f (emphasis added) (citation omitted).
 
 
 26
 The last sentence from comment f describes the fact pattern in which collateral estoppel is most often not applied. In such cases a criminal defendant who has been acquitted seeks to collaterally estop the government from maintaining some civil (usually a forfeiture) proceeding against him on the basis of his acquittal in the criminal action. The reason that collateral estoppel does not apply in such instances is that the government's burden has fallen off to only a preponderance in the civil proceeding from the much higher burden of beyond a reasonable doubt to which it was subject in the criminal proceeding. The government might very well be able to prove something by a preponderance that it could not prove beyond a reasonable doubt.[6]
 
 
 27
 Coming back to this case, we recognize that the Lanes also had a significantly higher burden in their first action than in this action. We also recognize the Lanes' reliance on U.S. Aluminum Corp./Texas v. Alumax, Inc., 831 F.2d 878 (9th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988), to bolster their position. While that case is on point as one denying the use of collateral estoppel where the evidentiary burden fell from clear and convincing in the first action to preponderance in the second, it did not discuss the particularity, vel non, of the first judgment and whether specific findings therein might have allowed for the later use of collateral estoppel. We do not view U.S. Aluminum as dispositive of the case before us, in which we are convinced that collateral estoppel should be used.
 
 
 28
 The facts of this case bring it within the possible exception of comment f and make it distinct from the cases cited by counsel and discovered in our own research where collateral estoppel was not applied. All of those cases lacked the specificity found in the memorandum opinion of Judge Harris in Lane I upon which preclusion of an issue could be based.
 
 
 29
 The Lanes have made a valiant argument that Judge Harris' findings do not really mean that they understood what they were doing when those findings are viewed through the glass of clear and convincing evidence under Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Lanes' position is that when Judge Harris found that they fully understood the documents they signed that was only a finding that they failed to prove by clear and convincing evidence that they did not understand the documents. Because Anderson requires that findings must be made in light of the relevant evidentiary burden, the Lanes argue that Judge Harris' findings must leave room for them to prove by a preponderance in this case that they did not understand the documents.
 
 
 30
 We believe the Lanes have missed the simplicity of the findings from Lane I--obscuring them with an unnecessarily complex argument. While Anderson requires that a trial judge's findings be made and reviewed in light of the applicable evidentiary burden, Anderson does not preclude a trial judge from making findings that are more definitive than those couched only in terms of the applicable evidentiary standard. Judge Harris found that the Lanes fully understood the transfer documents. That is not the same as finding that they did not prove by clear and convincing evidence that they did not understand the documents. While the latter would have been all that was necessary to defeat the Lanes under the clear and convincing burden, it was simply not what Judge Harris found. He concluded that the evidence went beyond a showing that the Lanes had failed to disprove their understanding by clear and convincing evidence, and instead showed that they actually had understanding by at least a preponderance, if not more. See Memorandum Opinion at 16, Appellants' Appendix at 62.[7] We affirmed in Lane I.
 
 
 31
 The Lanes further argue that Judge Harris was simply stating his findings in the affirmative and, therefore, was not doing anything more than they suggest. We disagree. Even a cursory reading of Judge Harris' opinion reveals that he found that the Lanes did understand the transfer--almost by clear and convincing evidence going the other way, as if the burden were on the Special Panel. We agree with Judge Arnold that it would be difficult to find more forthright findings than those reached by Judge Harris in the trial of Lane I on the question of the Lanes' understanding. Transcript of Pretrial Conference at 8, 12, 13, 17-18; Appellees' Appendix at 8, 12, 13, 17-18.
 
 
 32
 Our decision to apply collateral estoppel in this case should be viewed in light of several considerations that do not suggest a broad rule of law. First, we are applying collateral estoppel in a civil case based on the judgment from an earlier civil case where the standard of proof has only fallen to preponderance from clear and convincing. Second, we are doing so on this record, by which we are convinced that the Lanes have had the opportunity to litigate this issue and lost on the merits by particular specific findings. Third, those findings can now be used to preclude relitigation under an easier burden only because of their particularity and specificity as discussed above.[8]
 
 III. CONCLUSION
 
 33
 We hold that, because Judge Harris' findings were specific and certain on the question of the Lanes' understanding of the transfer documents, the Lanes are collaterally estopped from relitigating the same issue in this case. A finding that they understood the documents defeats the malpractice claim. That finding has already been made by Judge Harris, and we give it preclusive effect. Therefore, the summary judgment entered by the district court is affirmed.
 
 
 
 [1]
 The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas
 
 
 [2]
 For greater factual detail see Lane v. Peterson, 899 F.2d 737 (8th Cir.1990) and Lane v. Peterson, 851 F.2d 193 (8th Cir.1988)
 
 
 [3]
 The Honorable Oren Harris, Senior United States District Judge for the Western District of Arkansas
 
 
 [4]
 For discussions of this case, see Note, Davidson v. Lonoke Production Credit Association: A Federal Court Explores Mutuality of Collateral Estoppel in Arkansas, 37 Ark.L.Rev. 486 (1983); Richardson Oil Co. v. Cook, 617 F.Supp. 669, 670-71 (W.D.Ark.1985)
 
 
 [5]
 The Lanes' complaint against Sullivan reads much like their complaint from Lane I against the Special Panel, only here their theory of recovery is legal malpractice, and is something of a shotgun approach. They allege sixteen counts of negligence. The gist of each is that Sullivan either failed to represent or misrepresented to the Lanes the true nature of the transfer of their stock to the Special Panel. Complaint at 17-18, Appellants' Appendix at 19-20. A finding that the Lanes understood the transfer would defeat the causation element of negligence, thereby defeating the malpractice claim. The Lanes' attorney conceded as much in the pretrial conference before Judge Arnold. Transcript of Pretrial Conference at 4, Appellees' Appendix at 4
 
 
 [6]
 See, e.g., One Lot Emerald Cut Stone v. United States, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (per curiam)
 
 
 [7]
 By way of example, we quote a passage from Judge Harris' findings, "From the testimony, the Court finds that the Lanes clearly and completely understood the nature and the substance of each item which they signed...." Memorandum Opinion at 16, Appellants' Appendix at 62. This finding is the kind which comment f describes. The finding suggests "in effect, that the losing party in the first action [the Lanes] would also have lost had a significantly different burden been imposed." Restatement (Second) of Judgments Sec. 28, comment f (1980)
 
 
 [8]
 Our holding is not entirely without precedent. At least one other circuit has allowed collateral estoppel to operate despite a lesser burden of proof in the second action where specific findings have been made in the first action on an issue determinative to both. Marlene Industries Corp. v. N.L.R.B., 712 F.2d 1011, 1015-17 (6th Cir.1983)